IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: | **Filed / Docketed** <br> **December 13, 2007** |
| GARY L. MAHAN and <br> JOLENE R. MAHAN, | Case No. 06-11253-M <br> Chapter 7 |
| **Debtors.** | |
| PATRICK J. MALLOY, III, Trustee, | |
| **Plaintiff,** | |
| v. | Adv. Proc. No. 07-01001-M |
| CAPITAL ONE AUTO FINANCE, INC., | |
| **Defendant.** | |

## MEMORANDUM OPINION

In one of the most common transactions undertaken in American society, a husband and wife purchased a car. The deal included financing, as the couple either could not or chose not to pay cash for the vehicle. Neither paid particular attention to the documents which they signed, but both had a general understanding that either they paid for the car, or someone would come and take it away from them. The question is whether such a general understanding is equal to an intent to grant a security interest in the automobile. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. §

1334(b).¹  Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(K).

## Statement of Facts

Gary and Jolene Mahan ("Debtors" or the "Mahans") are husband and wife.  In May 2005, they went to Molder Motors in Bartlesville, Oklahoma, and purchased a 2002 Honda Accord (the "Car").  They signed a sales agreement for the Car, and drove it off of the lot.  As part of the transaction, a salesman from Molder Motors advised them to expect a packet in the mail from a lender within the next week.  That packet would include a check and other documentation.  The check was to be returned to Molder Motors to be used to pay for the Car.  About a week later, a packet of documents arrived from Capital One Auto Finance, Inc. ("Capital One").  Included in the packet were a document entitled Note and Security Agreement (the "Security Agreement"), and a set of Truth in Lending disclosures.  The Note and Security Agreement included the following statement:

> SECURITY INTEREST: As security for payment and performance of all obligations under this Agreement and extensions and renewals thereof, you grant Capital One a security interest in the vehicle purchased with the loan proceeds, all parts or accessories put on the vehicle, all insurance premiums and service contracts financed for you for rebates of such insurance premiums or service contracts, and in the proceeds of any of the foregoing, which security interest secures all sums which may become due under this Agreement as well as any modifications, extensions, renewals, amendments or refinancing of this Agreement.  You agree to immediately cause Capital One to be named as the only lienholder on any certificate of title relating to the vehicle and that Capital One may hold the certificate of title until all amounts owed under this Agreement are

---

¹ Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2007).  All other references to federal statutes and rules are also to West 2007 publications.

paid.[2]

Also included in the packet was a check from Capital One (the "Check").  Jolene Mahan took the Check to Molder Motors.  The Check contained the following language:

> NOTE: By signing and negotiating this check, you become bound by the Note and Security Agreement delivered to you by Capital One Auto Finance, Inc. and bearing the above check number.[3]

In order to negotiate the Check, Debtors were required to sign the same and cause the vehicle identification number for the Car to be written thereon.  Both Mahans signed the check and Mrs. Mahan then delivered it to Molder Motors.  Both the Check and the Security Agreement reference the same check number, and the vehicle identification number on the check corresponds to the vehicle identification number for the Car.  Capital One then noted its security interest on the title to the Car.

At trial, Mrs. Mahan testified that she financed the purchase of approximately four motor vehicles prior to the purchase of the Car.  She testified that she had also taken a class in consumer loans.  Mrs. Mahan testified that she understood that, at the time she purchased the Car, she would be granting a security interest in the Car to a lender.  She indicated that at the time she received the documents from Capital One she "scanned them" and did not read them closely.  Mr. Mahan testified that he did not read the documents from Capital One but that he understood the transaction to be that either he would pay for the Car or someone would "repo" the Car.  The Mahans acknowledge that they had an opportunity to review all of the documents from Capital One in detail but chose not to do so.

---

[2] *Defendant's Exhibit 4-2.*

[3] *Plaintiff's Exhibit 1-1.*

3

On September 14, 2006, the Mahans filed a petition for relief under Chapter 7 of the Bankruptcy Code. Patrick J. Malloy ("Malloy"), the Plaintiff herein, has been appointed to serve as the trustee in the case. The Car is included as an asset of the bankruptcy estate. On January 4, 2007, Malloy filed this adversary proceeding, seeking a determination that Capital One had no valid security interest in the Car. Capital One has filed its answer, asking the Court to find that it holds a properly perfected security interest in the Car. The matter was tried to the Court on November 28, 2007.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

Article 9 of the Uniform Commercial Code (the "U.C.C.") applies to a "transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract."[4] A "security agreement" is "an agreement that creates or provides for a security interest."[5] An "agreement" is defined in the U.C.C. as "the bargain of the parties in fact as found in their language or inferred from other circumstances including course of performance, course of dealing, or usage of trade as provided in Section 1-303 of [title 12A]."[6] The essential elements of an enforceable security interest under 12A Oklahoma Statutes § 1-9-203 are that:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the

---

[4] 12A Okla. Stat. Ann. § 1-9-109(a)(1) (West 2001 & Supp. 2007).

[5] 12A Okla. Stat. Ann. § 1-9-102(a)(73) (West 2001 & Supp. 2007).

[6] 12A Okla. Stat. Ann. § 1-201(b)(3) (West 2001 & Supp. 2007).

>  collateral to a secured party; and
>
>  (3) . . . the debtor has authenticated a security agreement that provides a description of the collateral.[7]

The Oklahoma Comments to that section provide: "the basic method for attachment remains the authenticating (signing, or the electronic equivalent of signing) by the debtor of a security agreement that provides a description of the collateral."[8]

Malloy does not dispute that the composite document rule applies to security agreements in Oklahoma.[9] The composite document rule provides that "[a] security agreement need not be evidenced by a single document, but may be established through consideration of two or more written documents."[10] Often of critical importance under the composite document rule is language within the documents that links them together as forming a single security agreement.[11] For example, in *In re Cantu*, the debtor executed a loan agreement which referred to funds advance vouchers that would identify the property subject to the security interest. The separate funds

---

[7] 12A Okla. Stat. Ann. § 1-9-203(b) (West 2001 & Supp. 2007).

[8] *Id.*, Oklahoma Comments. *See also First Nat'l Bank & Trust Co. of Stillwater v. McKown*, 867 P.2d 1342, 1346 (Okla. Civ. App. 1993).

[9] *See J.L. Crump & Co. v. Mails*, 239 P. 143 (Okla. 1925); *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir. 1982) (applying Oklahoma U.C.C. § 9-203) (referring to doctrine of incorporation by reference); *FDIC v. Coones (In re Coones)*, 954 F.2d 596, 600 (10th Cir. 1992) (applying Wyoming U.C.C. § 9-203), *vacated on other grounds*, 506 U.S. 802 (1992).

[10] *In re Coones*, 954 F.2d at 600.

[11] *See e.g.*, *Dietz v. Hormel Employees Credit Union (In re Cantu)*, 238 B.R. 796 (8th Cir. BAP 1999) (loan agreement and funds advance vouchers each contained language of incorporation with one another), *aff'd*, 221 F.3d 1341 (8th Cir. 2000); *In re Coones*, 954 F.2d at 600 ("A security agreement need not be evidenced by a single document, but may be established through consideration of two or more written documents. . . . It is appropriate to refer to other documents to establish the security interest unless the security agreement is facially complete and does not refer to any other documents.").

advance vouchers executed by the debtor also referred to the loan agreement as providing a security interest in the designated property. Using a composite documents theory, the Eighth Circuit Bankruptcy Appellate Panel found that the language of those documents, combined with the course of conduct of the parties and the purpose of the loan relationship, all supported the conclusion that a valid security agreement existed.[12]

In this case, the Mahans received the Check and the Security Agreement. The documents refer to each other, and the Check contains the correct vehicle identification number for the Car. Taken together, the Court concludes that the Security Agreement and the Check create a security agreement that satisfies the technical elements of § 1-9-203(b)(3). The Security Agreement provides that the Debtors are granting a security interest to Capital One in a vehicle to be purchased. The Security Agreement refers to a check upon which the VIN number of the vehicle purchased is to be placed. The executed Check does, in fact, contain both the VIN number of the Car and the Debtors' signatures. In addition, the front of the Check contains the following statement: "By signing and negotiating this check, you become bound by the Note and Security Agreement delivered to you by Capital One Auto Finance, Inc. and bearing the above check number."

A finding that the technical requirements of § 1-9-203 are met does not end the Court's inquiry. The Court must also be satisfied that by executing the various documents which comprise the security agreement, the parties intended to create a security interest in the Car in favor of Capital One. As with all contracts, Article 9 requires consent of both parties that a security interest attach

---

[12] *In re Cantu*, 238 B.R. at 799.

to the collateral at issue – in other words, a meeting of the minds.[13]  "Oklahoma law clearly looks to intent as controlling over form in creation of security interests."[14]  In order to be a valid security agreement, "there must be language in the instrument which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created.'"[15]  In addition, "[t]he document must show, to an objective observer, that debtor intended to transfer an interest in personal property *as security* to a creditor."[16]

As explained by a leading treatise on the U.C.C.:

Once the [1-]9-203 writing requirement is satisfied, there may be an inquiry into the second question whether the parties actually intended a security interest, a question of fact.  Ordinarily, the writing that satisfies the objective statute of frauds requirement above, will also be sufficient proof of an actual intention to create such an interest.  When this is so, no further inquiry is required. But in problem cases, the writing may barely meet the objective test, leaving for further factual inquiry the question whether the parties also actually intended to create a security interest. Parol

---

[13] *Frontier Fed. Savs. & Loan Ass'n v. Commercial Bank, N.A.*, 806 P.2d 1140, 1142 (Okla. Civ. App. 1990) ("Article 9 [of the U.C.C.] applies to *consensual* security interests."); 15 Okla. Stat. Ann. § 2 (West 2001) ("It is essential to the existence of a contract that there should be: (1) Parties capable of contracting; (2) Their consent; . . ."). *See also* 12A Okla. Stat. Ann. § 1-9-109, Official Cmt. 2 (West 2001 & Supp. 2007) ("all consensual security interests in personal property and fixtures are covered by this Article");  *First Nat'l Bank & Trust Co. of Okla. City v. R.W. Southwestern, Inc. (In re R.W. Southwestern, Inc.)*, 23 B.R. 252, 257 (Bankr. W.D. Okla. 1982) ("One essential element of a contract is a meeting of the minds or consent.") (citing 15 Okla. Stat. § 2 (1981)); *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210, 213 (Okla. 1977) ("A security agreement cannot attach, come into existence, unless there is agreement that it attach . . .").

[14] *McKown*, 867 P.2d at 1345.

[15] *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703 (10th Cir. 1972).  *See also Wilmot v. Cent. Okla. Gravel Corp.*, 620 P.2d 1350, 1356 (Okla. Civ. App. 1980) (citing *Johnson v. O-Kay Turkeys, Inc.*, 392 P.2d 741, 743 (Okla. 1964) ("A contract should be given the interpretation which will most closely approximate the mutual intentions of the parties at the time of contracting.").

[16] White & Summers, *Uniform Commercial Code*, 5th ed., § 31-3 at 99.

evidence is admissible to inform this second inquiry, but not the first.[17] The purpose of the § 1-9-203 writing requirement is two-fold: "One . . . [is] evidentiary, to prevent disputes as to precisely which items of property are covered . . . The second . . . is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations."[18]

Applying these principles to the present case, the documentation on its face establishes the parties' intent to create a security interest in the Car in favor of Capital One. Malloy argues that the Court's inquiry should not stop there, but rather that the Court should go beyond the face of the Security Agreement and Check and determine that no security interest was created because the Debtors have not been shown to have had a subjective intent to grant a security interest at the time they signed the Check.[19] After hearing the testimony, the Court finds as a matter of fact that both of the Debtors understood that they were borrowing money in order to purchase the Car and that, if they failed to repay the money that they had borrowed, the lender would have the right to get the Car back. Mrs. Mahan expressly testified that she understood she was granting a lien upon the Car as part of the purchase transaction. While his understanding was a bit less sophisticated, Mr. Mahan understood that if payments were not made, the Car would be "repoed." The Court finds the understanding of the Debtors sufficient to establish their intent to grant a security interest in the Car.

## Conclusion

---

[17] *Id.* at 100.

[18] *McKown*, 867 P.2d at 1346 (quoting *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973)); *see also* 12A Okla. Stat. Ann. §§ 1-9-108 U.C.C. Comment 2, 1-9-203 U.C.C. Comment 3.

[19] The Court has some concern that, in order to consider Malloy's argument, it must trample roughshod over the parol evidence rule, as Malloy is asking the Court to vary the terms of a written contract which is unambiguous on its terms. However, Capital One did not raise this issue, and the evidence upon which Malloy relies was received without objection.

At the time this bankruptcy case was filed, Capital One had a valid and properly perfected lien upon the Car. The Trustee is not entitled to avoid that lien. This action shall be dismissed with prejudice. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 13th day of December, 2007.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5092.3